# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| VICKI L. PURKEYPYLE,               ) | |
|                             ) | |
|               **Plaintiff,**    ) | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

VICKI L. PURKEYPYLE,                    )
                                        )
                        Plaintiff,      )
                                        )        CIVIL ACTION
v.                                      )
                                        )        No. 15-1333-JWL
NANCY A. BERRYHILL,[1]                  )
Acting Commissioner of Social Security, )
                                        )
                        Defendant.      )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1]On Jan. 20, 2017, Nancy A. Berryhill, became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.     Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning August 30, 2012.  (R. 19, 206, 216).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She argues that the ALJ erred in weighing the medical opinions and in evaluating the credibility of Plaintiff's allegation of symptoms resulting from her impairments.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  The Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court determines whether the ALJ's findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

2

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that the record evidence supports the ALJ's weighing of the medical opinions and her evaluation of the credibility of Plaintiff's allegations of symptoms.

## II.     Evaluation of the Medical Opinions in the Record

Plaintiff claims the ALJ erred in weighing the medical opinions of her treating healthcare providers, Dr. Sokolova, Dr. Jensen, and Dr. Cillessen.  She argues it was error to accord little weight to the opinion of her treating psychiatrist, Dr. Sokolova, no weight to the opinion of her treating psychologist, Dr. Jensen, and little weight to the opinion of her treating physician, Dr. Cillessen.  Specifically, she argues that Dr. Sokolova's opinion is supported by "extensive mental status abnormalities throughout the treatment records" (Pl. Br. 19), that the ALJ failed to specifically identify evidence contradicting Dr. Sokolova's opinions, id. at 21, and that reliance on non-examining mental healthcare sources over treating sources is "particularly problematic" because "it is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement."  Id. at 21-22 (quoting

4

Westphal v. Eastman Kodak Co. No. 05-CV-6120, 2006 WL 1720380 *5 (W.D.N.Y.

June 21, 2006) (quoting Am. Psych. Assn., The Principles of Medical Ethics, § 7, ¶3,

2006 Ed.)); (and citing Bethea v. Astrue, No. 310-cv-744 (JCH), 2011 WL 977062 *11

(D. Conn. Mar. 17, 2011) (applying Westphal in a Social Security case)).  She argues that

the ALJ should not have relied on Plaintiff's response to treatment to discount Dr.

Sokolova's opinion (Pl. Br. 22), and that Dr. Sokolova's opinion is supported by relevant

factors not adequately considered by the ALJ.  Id. at 23.  Finally, Plaintiff argues that "the

ALJ gave short shrift to the relevant" regulatory factors when weighing Dr. Cillessen's

medical opinion and failed to specify the evidence which supports her finding that

Plaintiff is physically able to perform medium exertion and thereby erroneously

interposed his lay opinion over that of a physician.  Id. at 24-25 (citing Kemp v. Bowen,

816 F.2d 1469, 1476 (10th Cir. 1987) and Soc. Sec. Ruling (SSR) 96-8p).

The Commissioner argues that the ALJ reasonably weighed the medical opinions.

She argues that the ALJ properly found Dr. Sokolova's opinions inconsistent with the

record evidence including her own treatment notes (Comm'r Br. 6-7) and inconsistent

with Plaintiff's activities of daily living, id. at 10, and relied excessively on Plaintiff's

allegations.  Id. at 11.  She argues that the ALJ identified the evidence she relied upon to

discount Dr. Sokolova's opinion and properly declined to accord Dr. Sokolova's opinion

controlling weight.  Id.  She argues that an ALJ is not required to expressly apply every

regulatory factor and properly accorded greater weight to non-examining source opinions

because, despite the case law cited by Plaintiff, it is well-settled that the Social Security

Administration may rely on the opinions of non-examining consultants to make disability decisions.  (Comm'r Br. 12-13).  Finally, she argues that the ALJ properly determined to accord no weight to Dr. Jensen's opinion and little weight to Dr. Cillessen's opinion.

## A.      The ALJ's Weighing of the Medical Opinions

The ALJ noted when she was considering the severity of Plaintiff's mental impairments at steps two and three of the sequential evaluation process, that she considered the opinions of the state agency psychological consultants who reviewed the evidence and completed the Psychiatric Review Technique at the initial level and at the reconsideration level.  (R. 24).  She explained that the reconsideration level consultant affirmed the opinion of the initial consultant with one notable exception--on reconsideration the consultant found that Plaintiff has moderate restrictions in social functioning rather than the mild restrictions found earlier.  Id.  The ALJ accorded weight to the consultants' opinion that Plaintiff's mental impairments do not meet or equal a Listing, because state agency consultants have expertise in evaluating impairments and because she found no record evidence contradicting their conclusion.  Id.  She found that the moderate restriction in social functioning was consistent with the record evidence, and consequently accorded the opinion of the reconsideration consultant greater weight than that of the initial consultant.  Id., see also (R. 28) (same).

The ALJ found that Plaintiff has severe, but not disabling physical impairments, and noted that she did not give great weight to the opinion of the state agency medical

consultant that Plaintiff's degenerative joint disease was not severe, because it was inconsistent with evidence received later and with the hearing testimony.  (R. 27-28).

The ALJ considered the medical opinion of Dr. Cillessen regarding Plaintiff's physical capabilities, and accorded it little weight because Dr. Cillessen's treatment visits with Plaintiff were relatively infrequent, her opinion is inconsistent with medical evidence showing mild diagnostic findings and minimal clinical signs, she apparently relied quite heavily on Plaintiff's report of symptoms and limitations, and because the opinion is inconsistent with Plaintiff's work activity and activities of daily living.  (R. 28).  The ALJ then turned to the medical opinions regarding Plaintiff's mental impairments, and reiterated her determination to accord greater weight to the opinion of the state agency psychological consultant who reviewed the record at the reconsideration level.  Id.  She noted that Dr. Jensen had treated Plaintiff for only three visits in slightly more than a year, and provided no weight to Dr. Jensen's opinion because "Dr. Jensen declined to provide functional limitations due to her brief contact with the claimant."  Id.

The ALJ summarized the opinions prepared by Plaintiff's treating psychiatrist, Dr. Sokolova in May 2013, June 2013, and July 2014.  (R. 29).  She accorded little weight to Dr. Sokolova's opinions because they were inconsistent with the record evidence as a whole and with Dr. Sokolova's treatment notes.  Id.  She found them inconsistent with Plaintiff's work activities and with her activities of daily living, and found that in completing the "Impairment Questionnaires" Dr. Sokolova "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to

uncritically accept as true most, if not all, of what the claimant reported."  (R. 29).

Finally, the ALJ noted that Dr. Sokolova referred Plaintiff to Dr. Blair for a

neuropsychological assessment, and accorded some weight to Dr. Blair's "assessment that

sustained concentration is likely problematic."  Id.

## B.    The Standard for Weighing Medical Opinions

"Medical opinions are statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of [a

claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and,

unless a treating source opinion is given controlling weight, all medical opinions will be

evaluated by the Commissioner in accordance with factors contained in the regulations.

Id. §§ 404.1527(c), 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings

123-24 (Supp. 2016).  A physician or psychologist who has treated a patient frequently

over an extended period of time (a treating source) is expected to have greater insight into

the patient's medical condition, and his opinion is generally entitled to "particular

weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an

examining physician [(a nontreating source)] who only saw the claimant once is not

entitled to the sort of deferential treatment accorded to a treating physician's opinion."

Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions

of nontreating sources are generally given more weight than the opinions of

nonexamining sources who have merely reviewed the medical record.  Robinson v.

Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2016) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors

are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

   After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C.   Analysis

   Plaintiff's argument that Dr. Sokolova's opinion should have been accorded controlling weight fails because controlling weight is proper only if Dr. Sokolova's

opinion "is not inconsistent with the other substantial evidence in [claimant's] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The threshold for denying controlling weight is low.  To deny controlling weight, the ALJ need only find evidence which is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion."  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2016).  At the very least, Dr. Sokolova's opinion regarding marked mental limitations is inconsistent with Dr. Wilkinson's Mental RFC which provides for at most moderate limitations.  (R. 118-19, 132-33).  While Plaintiff disagrees with Dr. Wilkinson's opinion, she does not, and she cannot, argue that it is an opinion which no reasonable mind would accept to support a conclusion that Plaintiff has at most moderate mental limitations.  The ALJ did not err in failing to accord controlling weight to Dr. Sokolova's opinion.

Plaintiff's arguments, that the ALJ failed to identify evidence contradicting Dr. Sokolova's opinion and evidence that supports the ALJ's finding that Plaintiff can perform medium exertion, are belied by the court's discussion above, and by the ALJ's summary and discussion of the record evidence in the decision.  (R. 22, 24, 26-30).  Her related argument, that reliance on non-examining mental healthcare sources is problematic because it is unethical for a psychiatrist to offer a professional opinion without an examination and authorization, is misplaced.  The responsibility for evaluating the severity of a claimant's mental impairments at the initial and reconsideration levels has long been placed on psychological experts working as consultants for the agency.  20

C.F.R. §§ 404.1520a(e)(1), 416.920a(e)(1); see also 20 C.F.R. § 405.5 (defining

"Psychological expert").  Plaintiff does not argue that this process is contrary to the Act

or is unconstitutional.  If Plaintiff believes it is an ethical violation for the consultants to

perform such work, her first recourse lies with the agencies that license the consultants,

not with this court.  Moreover, the consultants in this case are psychologists, not

psychiatrists.  And at first blush it appears to the court that Plaintiff's applications for

benefits would constitute her authorization for the consultants to evaluate the severity of

her mental impairments in this context.

      The cases relied upon by Plaintiff in this regard do not require a different

conclusion.  First, the court notes that both case cited by Plaintiff are unpublished

decisions by district courts in other jurisdictions and are not binding on this court.

Moreover, the court finds them unpersuasive because the are distinguishable from this

case.  Westphal is a case brought under the Employee Retirement Income Security Act

(ERISA).  2006 WL 1720380, at *1.  Although Westphal concerned long term disability

pursuant to the terms of the ERISA plan at issue in that case, disability under the Social

Security Act is not determined in accordance with that plan, and the laws and regulations

controlling consideration of an ERISA claim are not related to judicial review of a

disability decision by the Social Security Administration.  Bethea is a case involving

judicial review of the Commissioner's denial of an application for SSI, but the controlling

issue there was that the ALJ relied on the opinion of a non-examining source over the

opinion of a non-treating source who had examined the claimant, Dr. Chwastiak.  2011

WL 977062, at *11.  The non-examining source relied exclusively on Dr. Chwastiak's examination, but reached a different conclusion without discrediting Dr. Chwastiak's conclusion and without explaining why his opinion differed from that of Dr. Chwastiak. Id.  The court in Bethea relied upon Westphal only for the principal that the opinion of a physician who has examined a claimant is generally worthy of greater weight than that of a non-examining source.  Id. (noting Westphal's holding that the sole reliance on non-examining physicians' opinions in the face of conflicting evidence was an abuse of discretion).  To the extent that the court in Bethea may have held that an opinion regarding a claimant's mental impairments from a non-examining source may never be given weight over that of a mental healthcare provider who examined the claimant because an opinion regarding mental impairments requires the healthcare provider to perform an examination before formulating an opinion, this court disagrees.  That proposition is contrary to the disability determination process used for many years by the Social Security Administration and would require the Commissioner to either accept without question the opinion of an examining healthcare provider procured by the claimant or procure a consultative examination in every case where mental impairment might be an issue.

Plaintiff's arguments, that Dr. Sokolova's opinion is supported by relevant factors not adequately considered by the ALJ and that the ALJ did not adequately consider the relevant regulatory factors when weighing Dr. Cillessen's medical opinion, seek merely to have the court reweigh the evidence for Plaintiff's benefit--which it may not do.

Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1500 (10th Cir. 1992)).  The arguments presented in Plaintiff's Brief and rejected by the court above illustrate the error in Plaintiff's approach.

The question for the court on judicial review of an agency decision is not whether the plaintiff can present a case which is based upon record evidence, but whether the Commissioner's final decision is supported by the record evidence.  As the Supreme Court noted long ago, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). The court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (quotations and brackets omitted)

The court's duty on judicial review is to determine whether the Commissioner's decision is supported by the record evidence.  Therefore, it is incumbent on Plaintiff to demonstrate that the evidence relied upon by the ALJ does not support the conclusion reached or that the record evidence precludes the conclusion.  Plaintiff has not done that here, but has merely suggested other potential interpretations of the evidence.

The ALJ accorded little weight to Dr. Cillessen's opinion because although she was a treating source, she saw Plaintiff relatively infrequently, her limitations to sedentary work and to a six hour day are inconsistent with mild diagnostic findings and

minimal clinical signs, she seemed to uncritically accept Plaintiff's report of limitations as true, and her opinion is inconsistent with Plaintiff's daily activities and the fact that Plaintiff was concurrently working.  (R. 28).  Plaintiff's only response to the reasons given by the ALJ is that although Dr. Cillessen treated Plaintiff relatively infrequently, she was a part of a "treatment team" at the Veterans' Affairs Medical Center where Plaintiff was treated regularly.  (Pl. Br. 24).  But, Plaintiff points to no evidence that the VA was using a team approach to treatment which would overcome the infrequent contact between Plaintiff and Dr. Cillessen and justify greater weight to Dr. Cillessen's opinion.  And, instead of addressing any of the remaining reasons given by the ALJ, Plaintiff merely points to other record evidence which in her view supports Dr. Cillessen's opinion.  But as noted above the court may not reweigh the evidence.

Plaintiff acknowledges that Dr. Jensen did not provide specific functional limitations, and she does not argue that the evidence required greater weight be accorded to Dr. Jensen's opinion.  She merely asserts that Dr. Sokolova's opinion should have been accorded greater weight because Dr. Jensen's opinion the Plaintiff "cannot withstand even low stress work" is "consistent with findings from Dr. Sokolova."  (Pl. Br. 24).  As the ALJ found, Dr. Jensen did not provide any functional limitations for Plaintiff.  (R. 341-44).  In fact, she stated that her conclusions with regard to Plaintiff's mental abilities were: "Unknown, given my brief contact w/ pt. at a crisis point in her life."  (R. 341).  This is ample evidentiary support for the ALJ's decision to give no weight to Dr. Jensen's opinion.  Moreover, contrary to Plaintiff's assertion that Dr. Jensen opined that Plaintiff

15

"cannot withstand even low stress work" (Pl. Br. 24), the record reveals that Dr. Jensen

checked the block indicating Plaintiff is capable of low stress work.  (R. 345).

  With regard to Dr. Sokolova's opinions, the ALJ accorded them only little weight

because they were inconsistent with the record evidence as a whole, inconsistent with Dr.

Sokolova's treatment notes which showed a positive response to pharmacotherapy,

inconsistent with Plaintiff's work activities and with her activities of daily living, and

because in completing the "Impairment Questionnaires" Dr. Sokolova "relied quite

heavily on the subjective report of symptoms and limitations provided by the claimant,

and seemed to uncritically accept as true most, if not all, of what the claimant reported."

(R. 29).  Plaintiff points to the regulatory standard for evaluating mental impairments and

to record evidence which in her view supports Dr. Sokolova's opinions, but does not

demonstrate fallacies in the ALJ's decision.  She argues that the positive response to

pharmacotherapy does not demonstrate the significant improvement necessary to function

without the limitations opined by Dr. Sokolova.  Plaintiff is correct that a positive

response to medication does not prove ability to work, but Plaintiff did have the positive

response noted by the ALJ, and that is not the only basis the ALJ relied upon to discount

Dr. Sokolova's opinion.  Plaintiff admits that she worked during the relevant time, but

argues that the work activity did not reach the level of significant gainful activity and

does "not preclude a finding of disability."  (Pl. Br. 22).  Plaintiff's argument turns the

burden of proof in a disability case on its head.  It is not the Commissioner's

responsibility to point to evidence that precludes a finding of disability, it is Plaintiff's

burden to present evidence that shows an inability to perform <u>any</u> substantial gainful activity.

Plaintiff has shown no error in the ALJ's evaluation of the medical opinions.

**III.    Credibility Determination**

Plaintiff claims the ALJ failed to evaluate her credibility properly.  And in supporting her claim, her primary argument is that the ALJ applied "flawed reasoning" and substituted "his [sic] interpretation of the clinical and objective evidence for the treating experts' opinions."  (Pl. Br. 27) <u>see also</u> <u>id.</u> at 25 citing <u>Kemp v. Bowen</u>, 816 F.2d 1469, 1476 (10th Cir. 1987).  She also argues that the ALJ erroneously "overemphasized Ms. Purkeypyle's response to treatment," and "failed to explain how Plaintiff's work activity and activities of daily living contradict a finding of disability.  <u>Id.</u> at 28.  The Commissioner points to the ALJ's findings regarding credibility, and argues that the record evidence supports those findings.  (Comm'r Br. 18-20).  She argues that "any arguable deficiency" in the ALJ's reliance on Plaintiff's activities of daily living or her positive response to medication would not change the credibility determination because the ALJ relied on multiple factors in reaching that determination.  <u>Id.</u> at 20.

**A.    The ALJ's Findings**

The ALJ found that Plaintiff's allegations of symptoms resulting from her impairments are partially (R. 30), but not entirely, credible.  (R. 29).  She relied upon several factors in reaching this conclusion and discounting Plaintiff's allegations:  the medical findings and treatment history, Plaintiff's daily activities, <u>id.</u>, her continued

seeking of employment after her alleged onset date, the part-time job she had maintained since April 2013, and that medications had helped to relieve her symptoms.  Id. at 30.

**B.**     **Analysis**

As Plaintiff's Brief suggests, the Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating credibility, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

18

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  Again, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence she relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied.

The court's review of an ALJ's credibility determination is deferential.  Credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988); Hackett, 395 F.3d at 1173 (same).

19

Once again, Plaintiff's arguments regarding "flawed reasoning," that Plaintiff's work activities and activities of daily living do not contradict a finding of disability, and that the ALJ overemphasized Plaintiff's response to treatment seek to have the court reweigh the evidence, which it cannot do. <u>Flaherty</u>, 515 F.3d at 1071. Plaintiff's suggestion that the ALJ substituted her interpretation of the evidence for that of the treating healthcare providers is misplaced. Plaintiff is correct that the court in <u>Kemp</u> held that while "the ALJ is authorized to make a final decision concerning disability, [s]he can not interpose h[er] own 'medical expertise' over that of a physician," especially the regular treating physician. <u>Kemp</u>, 816 F.2d at 1476. But, that holding was based upon the fact that in <u>Kemp</u> "there was not even evidence from a consulting physician retained by the agency to contradict the medical diagnosis, findings, and conclusions of [Mrs. Kemp's] treating physician." <u>Id.</u> Here, on the other hand, there is conflicting medical evidence, and as the <u>Kemp</u> court recognized when the evidence is equivocal and the medical opinions are conflicting, it is the ALJ's duty to resolve the ambiguities and the conflicts and to make the final decision concerning disability. That is what she did here, and Plaintiff has shown no error in her credibility finding.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 31st day of January 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**